# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALICIA SLATER,<br>    Plaintiff,<br><br>    v.<br><br>YUM YUM'S 123 ABC,<br>    Defendant. | :<br>:<br>:<br>:   Civil No. 2:20-cv-00382-JMG<br>:<br>:<br>: |

## MEMORANDUM OPINION

**GALLAGHER, J.**                                      May 28, 2021

Plaintiff Alicia Slater brings this action against her former employer, Defendant Yum Yum's 123 ABC, for breach of contract, conversion, and to recover unpaid overtime wages. Before the Court is Slater's motion for default judgment against Defendant. For the reasons set forth below, her motion is granted in part and denied in part.

## I.  BACKGROUND

Between May 21, 2018, and October 1, 2019, Slater was a teacher at Yum Yum's 123 ABC. Compl. ¶ 11, ECF No. 1 [hereinafter "Compl."]. Slater was paid on an hourly basis; her rate varied between $8.50–$13.00 per hour. *Id.* ¶ 13. Slater often worked in excess of forty hours in a work week, but Defendant failed to pay overtime wages. *Id.* ¶¶ 15–16.

During the course of her employment, Slater would bring her personal property to Defendant's premises, including, but not limited to, teaching materials, toys, diapers, and a Bluetooth speaker. *Id.* ¶ 12. Defendant never returned these items to Slater. *Id.* ¶ 42.

Defendant was served original process on February 6, 2020, but it never responded to the Complaint. *See* ECF No. 4. Accordingly, on July 21, 2020, the Clerk of Court entered default against it. *See* ECF No. 6. Slater now moves for a default judgment. *See* ECF No. 8. A hearing

to determine the amount of Slater's damages was held on May 11, 2021. *See* ECF No. 11.

## II. STANDARD

"It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)); *see also* FED. R. CIV. P. 55(b)(2). In deciding whether to enter a default judgment, we consider "whether the court has subject-matter jurisdiction and personal jurisdiction, whether service of process was proper, and whether the complaint establishes a legitimate cause of action against the defendant." *Rios v. Marv Loves 1*, No. 13-cv-1619, 2015 WL 5161314, at *8 (E.D. Pa. Sept. 2, 2015) (internal citation omitted).

Additionally, we evaluate the following factors to determine whether a default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). If we decide to enter a default judgment, we then "address the quantum of damages or other recovery to be awarded." *Rios*, 2015 WL 5161314, at *13.

For purposes of this analysis, "[t]he court accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages." *Id.* at *9 (citing *State Farm Fire & Cas. Co. v. Hunt*, No. 14-6673, 2015 WL 1974772, at *3 (E.D. Pa. May 4, 2015)).

## III. DISCUSSION

### A. Jurisdiction and Service

This Court has federal question jurisdiction over this case because it arises under the Fair Labor Standards Act (FLSA). *See* 28 U.S.C. § 1331; *see also* 29 U.S.C. § 216(b) ("An action to

recover . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.").

"Pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367, when a federal court has jurisdiction over a plaintiff's federal claims, the court may also exercise supplemental jurisdiction over the plaintiff's state law claims 'that are so related to [the plaintiff's federal] claims . . . that they form part of the same case or controversy.'" *Troncone v. Velahos*, No. 10-2961, 2011 WL 3236219, at *5 (D.N.J. July 28, 2011) (quoting 28 U.S.C. § 1367(a)). The touchstone for supplemental jurisdiction is whether the state law claims "share a 'common nucleus of operative fact[s]' with the claims that supported the district court's original jurisdiction." *Id.* (quoting *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003)). Here, we can exercise supplemental jurisdiction over Slater's state law claims because they relate to her FLSA claim. *See, e.g.*, *Jimenez v. Rosenbaum-Cunningham, Inc.*, No. 07-1066, 2010 WL 1303449, at *5 (E.D. Pa. Mar. 31, 2010) (FLSA action where court exercised supplemental jurisdiction over comparable Pennsylvania law claims).

We also have general personal jurisdiction over the Defendant. The Defendant is a Pennsylvania corporation with its principal place of business in Pennsylvania. Compl. ¶ 7. A corporation's principal place of business is a "paradigm" basis of general personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Finally, Defendant was properly served under Federal Rule of Civil Procedure 4(h). *See* ECF Nos. 4–5.

B.  **Causes of Action**

Slater alleges violations of the FLSA and the Pennsylvania Wage Payment and Collection Law (WPCL), and also brings claims for breach of contract and conversion. I examine these claims in turn.

1.  **FLSA**

Count I of the Complaint alleges that "Defendant's willful failure to pay Plaintiff from May 21, 2018 through her last day of employment, October 1, 2019, one and one-half times her regularly hourly rate for hours worked in excess of forty hours in a work week violated the overtime provision of the [FLSA]." Compl. ¶ 27.[1]

"To state a *prima facie* claim under the FLSA, a plaintiff must simply allege the following: (1) the plaintiff was an 'employee,' as defined by the FLSA; (2) the defendant was 'engaged in commerce,' as defined by the FLSA; and (3) the plaintiff was not paid the federal minimum wage or was not paid overtime compensation for hours worked in excess of forty in a given week." *Logan v. Victory Ent., Inc.*, No. 18-17129, 2021 WL 912814, at *3 (D.N.J. Mar. 10, 2021) (citing 29 U.S.C. § 216(b)); *see also Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 242 (3d Cir. 2014) ("[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a given workweek as well as some uncompensated time in excess of the [forty] hours." (internal quotation marks and citation omitted)).

An "employee" under the FLSA is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "In the Third Circuit, courts determining whether a worker is an employee or an independent contractor for purposes of the FLSA look to the economic realities of the relationship

---

[1] Slater originally requested relief "on behalf of herself and all other similarly situated individuals." Compl. ¶ 22. However, her default judgment motion makes no mention of a collective action, and at the damages hearing, Slater indicated that she is only seeking relief on her own behalf.

between the alleged employer and employee." *Verma v. 3001 Castor, Inc.*, No. 13-3034, 2014 WL 2957453, at *4 (E.D. Pa. June 30, 2014) (quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382–83 (3d Cir. 1985)). Several factors dictate the "economic realities" of the relationship, including:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.

*Logan*, 2021 WL 912814, at *3 (citing *Donovan*, 757 F.2d at 1382–83). "[N]either the presence nor absence of any particular factor is dispositive." *Donovan*, 757 F.2d at 1382.

Here, Slater alleges that Defendant "was responsible for its own day to day operations, hiring and firing of employees, setting of employees' hours, and paying employees' wages." Compl. ¶ 9. These allegations, which must be accepted as true, are sufficient to establish Slater's "employee" status. *See, e.g.*, *Logan*, 2021 WL 912814, at *4 (finding "significant supervision and control over Plaintiff to classify Plaintiff as an employee" where defendant had the power to hire and fire individuals at will and require that individuals work particular shifts); *Hancock v. A&R Flag Car Serv.*, No. 13-6596, 2017 WL 3675411, at *5 (E.D. Pa. Aug. 24, 2017) (refusing to set aside default judgment in FLSA case despite fact that, "[w]ithout discovery, it is difficult to make the determination of whether the plaintiffs were independent contractors or employees of the defendants").

A defendant employer is "engaged in commerce" if it "is engaged in the operation of . . . a *preschool*, elementary or secondary school, or an institution of higher education." 29 U.S.C. § 203(s)(1)(B) (emphasis added). Additionally, "[c]ourts in this Circuit have repeatedly held that allegations that the defendant was an enterprise engaged in commerce under the FLSA" is

5

sufficient at the pleadings stage. *Logan*, 2021 WL 912814, at *4 (citing *Dong v. Ren's Garden*, No. 09-5642, 2010 WL 1133482, at *4 (D.N.J. Mar. 22, 2010)).

Here, Slater alleges that "Plaintiff and all others similarly situated were employees engaged in commerce." Compl. ¶ 14. Defendant also qualifies as a "preschool" under the FLSA. Slater describes Defendant as a "Pennsylvania corporation engaged in providing *child care services*." *Id.* ¶ 7 (emphasis added). Importantly, the Department of Labor's internal enforcement guidelines define "preschools" as "any enterprise. . . which provides for the care and protection of infants or preschool children outside their homes during any portion of a 24-hour day. . . . *This includes day care centers*, nursery schools, and kindergartens." U.S. Dep't of Labor, Wage & Hour Division, Field Operations Handbook at § 12g03 (emphasis added); *see also Biziko v. Van Horne*, No. 1:16-cv-0111-BP, 2019 U.S. Dist. LEXIS 143673, at *29 (N.D. Tex. Aug. 20, 2019) ("[S]ubstantial authority holds that child day care centers should be considered preschools for the purposes of the FLSA." (internal quotation marks and citations omitted)).

Finally, "plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Davis*, 765 F.3d at 243 (internal quotation marks and citations omitted). Slater alleges that she "often worked more than forty hours per week," and that Defendant "willfully failed to compensate Plaintiff and all others [sic] similarly situated employees at a rate of one and one-half times their regularly hourly rate for the hours worked in excess of forty hours in a work week." Compl. ¶¶ 15–16. These allegations are sufficient to state an FLSA claim. *See, e.g.*, *Logan*, 2021 WL 912814, at *4 (allegations that plaintiff "worked more than forty hours in a given workweek" and that "Defendants did not pay her overtime wages" were sufficient to state an FLSA claim).

### 2. WPCL

Count II of the Complaint alleges that "Defendant willfully failed to pay Plaintiff all amounts of wages earned, including overtime, within the time limits set forth" in the WPCL. Compl. ¶ 34.

"The WPCL 'does not create a right to compensation . . . . [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned.'" *Rosario v. First Student Mgmt. LLC*, No. 15-6478, 2016 WL 4367019, at *7 (E.D. Pa. Aug. 16, 2016) (quoting *De Asencio*, 342 F.3d at 309). While "a formal written contract is not required to support a legally viable WPCL claim," the plaintiff must, at a minimum, "establish the formation of an implied oral contract to recover under the WPCL." *Id.* (internal quotation marks and citations omitted). "In other words, a plaintiff seeking recovery under the WPCL must allege a contractual right—either written or oral—to the claimed wages." *Id.* (internal quotation marks and citations omitted).

Slater's WPCL claim does not meet this standard. While Slater alleges that she "had a[n implied] contract by performance with Defendant," Compl. ¶ 37, "nowhere in the . . . complaint does [Slater] contend that Defendant[] promised to or implied that they would compensate her at a higher rate of pay for . . . extra work." *Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P.*, 132 F. Supp. 3d 645, 650 (E.D. Pa. 2015). This is fatal to her WPCL claim. *See id.* ("[Plaintiff] cannot maintain a plausible WPCL claim for overtime pay without alleging any facts that demonstrate that Defendants intended to obligate themselves to pay [plaintiff] more than her agreed-upon regular wage . . . ."); *Mackereth v. Kooma, Inc.*, No. 14-04824, 2015 WL 2337273, at *10 (E.D. Pa. May 14, 2015) (dismissing WPCL claim where "Plaintiffs do not allege the existence of a

contractual right, either express or implied, to recover the wages they seek pursuant to the WPCL").[2]

### 3. Breach of Contract

Count III of the Complaint alleges that Defendant violated Slater's "contract by performance" by failing to pay her "for the overtime she worked from May 21, 2018 through her last date of employment, October 1, 2019." Compl. ¶¶ 37–39.

To establish breach of contract under Pennsylvania law, a plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Udodi v. Stern*, 438 F. Supp. 3d 293, 299 (E.D. Pa. 2020) (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003)).

Slater's contract claim fails for the same reason that her WPCL claim fails—she has not alleged a contractual entitlement to overtime wages at a rate of one and one-half times her regularly hourly rate. *See, e.g.*, *Oxner*, 132 F. Supp. 3d at 649–50 (finding no implied promise to pay overtime rates for extra hours worked).[3]

### 4. Conversion

Count IV of the Complaint alleges that "Defendant has failed and/or refused to return to [Slater] her personal items left on Defendant's premises." Compl. ¶ 42.

---

[2] Slater requests liquidated damages on her WPCL and FLSA claims. Even if Slater stated a cognizable WPCL claim, the rule against double recovery would bar Slater's requested relief. *See, e.g.*, *Wiant v. Coppa*, No. 13-1750, 2018 WL 5978097, at *3 n.2 (E.D. Pa. Nov. 14, 2018) ("In Plaintiff's proposed damages calculations . . . Plaintiff included two amounts for liquidated damages: one under the federal statute and one under the state statute. . . . [T]his Court finds that Plaintiff is entitled only to the higher amount of liquidated damages, and not both.").

[3] Notably, Slater does not request damages for her breach of contract claim. *See* Mot. 1, ECF No. 8.

"Conversion is the deprivation of another's right to property in, or use in possession of, a chattel, without the owner's consent and without lawful justification." *Bamont v. Pa. Soc'y for the Prevention of Cruelty to Animals*, 163 F. Supp. 3d 138, 155 (E.D. Pa. 2016) (internal quotation marks and citation omitted). "A party will be found liable for conversion for unreasonably withholding possession from one who has the right to it." *Heaven v. Portfolio Recovery Assocs., LLC*, 303 F. Supp. 3d 333, 342 (E.D. Pa. 2018) (internal quotation marks and citation omitted); *see also Fort Washington Res., Inc. v. Tannen*, 846 F. Supp. 354, 361 (E.D. Pa. 1994) ("There are several ways in which conversion can be committed: 1) acquiring possession of the chattel with the intent to assert a right to it which is adverse to the owner; 2) transferring the chattel and thereby depriving the owner of control; 3) unreasonably withholding possession of the chattel from one who has the right to it; and 4) misusing or seriously damaging the chattel in defiance of the owner's rights." (citing *Norriton E. Realty Corp. v. Central-Penn Nat'l Bank*, 254 A.2d 637, 638 (Pa. 1969))).

Slater alleges a cognizable conversion claim because Defendant has refused to return her personal items, an allegation that we must accept as true.[4]

### C. Appropriateness of Default Judgment

Having found legitimate causes of action against Defendant, we now consider the "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable

---

[4] This allegation distinguishes this case from *Nerviano v. Contract Analysis Sys., LLC*, No. 17-4907, 2018 WL 2240533, at *2 (E.D. Pa. May 16, 2018). There, a terminated employee brought a conversion claim where defendants "kept her personal effects that were in her office for over six weeks before . . . return[ing]" them. *Id.* The court dismissed the claim because the former employee did "not allege that she tried to get her stuff or that Defendants refused to turn over" the property. *Id.* at *6.

9

defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164.

All three factors suggest that a default judgment is appropriate here. First, Slater will clearly be prejudiced if default judgment is denied. She filed this action over a year ago with no response from the Defendant, and further delay will prevent the adjudication of her claims.

Second, Defendant may, at first glance, have a litigable defense against the FLSA claim. The FLSA exempts teachers from overtime coverage if they: (1) have "a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge" and (2) are "employed and engaged in this activity as a teacher in an educational establishment." 29 C.F.R. § 541.303(a). Application of this exemption is "an affirmative defense on which the employer has the burden of proof." *Marn v. ELS Educ. Servs., Inc.*, No. 20-3912, 2020 WL 7383193, at *2 (D.N.J. Dec. 15, 2020) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974)).

Examples of exempted teachers include, but are not limited to: "Regular academic teachers; teachers of kindergarten or nursery school pupils; teachers of gifted or disabled children; teachers of skilled and semi-skilled trades and occupations; teachers engaged in automobile driving instruction; aircraft flight instructors; home economics teachers; and vocal or instrumental music instructors." 29 C.F.R. § 541.303(b). An "educational establishment" is "an elementary or secondary school system, an institution of higher education or other educational institution." *Id.* § 541.204(b).

Slater's allegations do not place her squarely within the "teacher exemption." *Cf. Vicedomini v. A.A. Luxury Limo*, No. 18-cv-7467, 2019 U.S. Dist. LEXIS 212944, at *16 (E.D.N.Y. Dec. 6, 2019) ("[A] FLSA exemption is an affirmative defense, and a plaintiff is not required to plead the absence of such a defense." (internal quotation marks and citation omitted)).

As confirmed at the May 11 hearing, Slater was primarily engaged in custodial childcare, so she is not a "teacher" under the FLSA. *See, e.g.*, U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (May 4, 1982) ("While preschools engage in basic educational activities for the children attending, preschool employees whose primary duty is to care for the needs of the children would not ordinarily meet the requirements for exemption as teachers."); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Sept. 29, 2008) ("Unless the daycare center provides grade school curriculums, introductory programs in kindergarten, or nursery school programs in elementary education of the sort described in § 541.204(b), . . . the instructors are not within the scope of the teacher exemption of the FLSA.").

Finally, the delay is due to the Defendant's culpable conduct. "Culpable conduct" is defined as conduct that is done "willfully or in bad faith." *Chamberlain*, 210 F.3d at 164 (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 124 (3d Cir. 1983)). While there is no direct evidence of the Defendant's bad faith, its acceptance of service of the Complaint and subsequent failure to respond is "willful." *See Serv. Emps. Int'l Union Loc. 32 BJ, Dist. 36 v. ShamrockClean, Inc.*, 325 F. Supp. 3d 631, 637 (E.D. Pa. 2018)

### D. Damages

We finally turn to damages. Allegations regarding the amount of damages do not have to be taken as true. *Morgan v. RCL Mgmt., LLC*, No. 18-800, 2020 WL 3429444, at *1 (E.D. Pa. June 23, 2020) (citing to FED. PRAC. & PROC. CIV. § 2688 (3d ed. 1998)). The plaintiff must prove that she is "entitled to recover damages and must substantiate the amount, such as through affidavits or other appropriate evidence." *Id.*

Here, Slater requests $2,436.34 in unpaid overtime wages and $2,436.34 in liquidated damages under the FLSA, $609.09 in liquidated damages under the WPCL,[5] $150.00 for the conversion claim, attorneys' fees in the amount of $5,487.50, and costs in the amount of $533.00. *See* Mot. 3–4, ECF No. 8; Suppl. Doc. 1–3, ECF No. 12.

After hearing counsel explain the calculation of unpaid overtime wages, *see* Mot. 2–3, ECF No. 8, we find that Slater is entitled to those wages as well as liquidated damages under the FLSA. *See* 29 U.S.C. § 216(b); *see also Santiago v. Lucky Lodi Buffet Inc.*, No. 15-6147, 2016 U.S. Dist. LEXIS 146089, at *9–10 (D.N.J. Oct. 21, 2016) ("As Defendants have failed to appear, presenting no evidence . . . the Court must award liquidated damages.").

We similarly accept Slater's estimate of damages for her conversion claim. *See Farm Credit Leasing Servs. Corp. v. Ferguson Packaging Mach., Inc.*, No. 07-1900, 2007 U.S. Dist. LEXIS 89330, at *22 (E.D. Pa. Dec. 5, 2007) ("Under Pennsylvania law, the measure of damages for conversion is the market value of the converted property at the time and place of conversion." (internal quotation marks and citation omitted)); *cf. Penn Elec. Supply Co., Inc. v. Billows Elec. Supply Co., Inc.*, 528 A.2d 643, 646 (Pa. Super. Ct. 1987) (noting that the "traditional function" of the fact finder in conversion actions is to estimate damages).

"Finally, the FLSA authorizes 'a reasonable attorneys' fee to be paid by Defendants, and costs of the action' to a prevailing plaintiff." *Lurty v. 2001 Towing & Recovery, Inc.*, No. 1:18-cv-06302-NLH-AMD, 2019 U.S. Dist. LEXIS 122373, at *10 (D.N.J. July 23, 2019) (quoting 29 U.S.C. § 216(b)). In FLSA cases, the Third Circuit uses a "lodestar" approach to calculate attorney's fees: "the court multiplies the hours reasonably expended by counsel in representation

---

[5] Slater is not entitled to damages under the WPCL. For the reasons stated above, she has not stated a cognizable WPCL claim. And even if she stated a cognizable WPCL claim, the rule against double recovery would bar additional liquidated damages.

on the case by the reasonable hourly rate for the attorney involved." *Maldonado v. Lucca*, 636 F. Supp. 621, 628 (D.N.J. 1986). Based on counsel's timekeeping records and supporting documentation, we find that the number of hours expended and the hourly rates are reasonable, as is the amount of costs incurred. *See* Suppl. Doc. 1–3, ECF No. 12; *see also Qu Wang v. Fu Leen Meng Rest. Liab. Co.*, No. 1:16-cv-08772-NLH-AMD, 2018 U.S. Dist. LEXIS 29377, at *11 (D.N.J. Feb. 23, 2018) (in FLSA default judgment case, finding reasonable 15.8 hours of work at the hourly rate of $325 per hour); *Lurty*, 2019 U.S. Dist. LEXIS 122373, at *11 (in FLSA default judgment case, finding reasonable 12.2 hours of work at hourly rates over $400 per hour). We therefore grant Slater's requests for attorneys' fees and associated costs.

## IV. CONCLUSION

For the foregoing reasons, Slater's motion is granted in part and denied in part. A separate judgment will be filed in favor of Slater and against the Defendant.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge